**SIGNED this 17 day of January, 2019.**



_____
**James P. Smith
Chief United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 13 |
| | : | |
| STEVEN T. CHAPMAN, | : | |
| WHITNEY CROCKER CHAPMAN, | : | |
| Debtors | : | Case No. 17-30427 JPS |
| | : | |
| HEATHER D. CHAPMAN, | : | |
| Movant | : | |
| | : | |
| vs. | : | |
| | : | |
| STEVEN T. CHAPMAN, | : | |
| WHITNEY CROCKER CHAPMAN, | : | |
| Respondents | : | |

BEFORE
James P. Smith
United States Bankruptcy Judge

APPEARANCES:

    For Debtors/Respondents:    R. Jeffrey Field
    Christopher J. Sleeper
    Jeff Field & Associates
    342 North Clarendon Avenue
    Scottdale, GA 30079

    For Movant:    Barry Gordon Irwin
    Attorney at Law
    P.O. Box 1861
    Athens, GA 30603-1861

    For Chapter 13 Trustee:    Tony J. Coy
    Office of the Chapter 13 Trustee
    P.O. Box 954
    Macon, GA 31202

## **MEMORANDUM OPINION**

### PROCEDURAL POSTURE

On November 28, 2018, the Court held a confirmation hearing on Debtors' modified Chapter 13 plan. In this opinion, and for the reasons explained below, the Court will only address the issue of whether Debtors filed their Chapter 13 petition in good faith. 11 U.S.C. § 1325(a)(7). At the hearing, the Court initially stated that it would also consider whether the modified plan was proposed in good faith (§ 1325(a)(3)) and whether the modified plan was feasible (§ 1325(a)(6)). However, because Debtors intend to file another modified plan, and because that potential future plan appeared to evolve during the hearing, the Court has determined that it will not consider, at this time, whether any such plan has been proposed in good faith and whether it would be feasible.

### FACTS

Prior to November 2012, Debtor Steven Chapman ("Steven") and Heather Chapman ("Heather") were married and lived in a home in Royston, Georgia ("the marital home"). Sometime prior to 2012, Heather moved to England to go to veterinarian school. Steven remained in Georgia. While Heather was in England, Steven became involved with another woman. This ultimately led to their divorce.

A Separation Agreement was entered by the Superior Court of Franklin County, Georgia, on November 18, 2012. As it relates to this Chapter 13 case, Steven and Heather agreed to terminate their marriage, both parties waived alimony and Steven was granted sole ownership of the marital home and agreed to assume and pay the debt secured by the home.[1] Steven also agreed to pay Heather's USAA credit card debt of approximately $9,000. Thereafter, Steven made payments on the marital home, but never made any payments on the credit card debt.

---

[1] Prior to the divorce, the home had been jointly owned and the debt secured thereby was jointly owed.

Steven is a heavy equipment operator for the Georgia Air National Guard. In 2016, he was deployed to Kuwait. Upon return, he could not find full time work and fell behind on the mortgage payments on the marital home.

In early 2017, Heather brought a contempt action against Steven for his failure to pay the credit card debt and mortgage payment. The state court entered a temporary order on March 7, 2017, in which Steven, inter alia, agreed to pay Heather, within 45 days, $3,421 to reimburse her for payments she had made on the credit card debt. He also agreed to resume the mortgage and credit card payments within 30 days. However, Steven and Whitney Chapman (his current wife and hereafter "Whitney") filed a Chapter 7 petition on April 13, 2017. In May 2017, Debtors moved to convert their case to a Chapter 13 case. Heather objected to the conversion. After notice and hearing, the Court overruled the objection and, on June 29, 2017, entered an order converting the case to Chapter 13.

Steven never made any payments on the credit card debt. It is unclear from the record in this case what payments he made on the mortgage. However, the Court notes that on January 19, 2018, U.S. Bank Trust, N.A. filed a motion for relief alleging that it held the debt secured by the marital home and that Steven was in default for postpetition payments from July 2017 through December 2017. A consent order granting relief from stay was entered on February 20, 2018.

During this case, Steven's employment status has changed frequently. When the case was originally filed, Steven was a delivery driver for Aaron's Lease and Sales, for which he received gross monthly income of $1,256.67. He also worked part-time at a pet boarding business and earned approximately $350 per month. He also received approximately $590 per month from the Georgia Air National Guard. From January 2018 through July 2018, Steven was deployed to Africa with the Georgia Air National Guard. While deployed, he received from the Guard monthly gross pay of $6,455 and Whitney received $150 per month as separation pay. Upon his return, Steven obtained full time employment in September 2018 as an equipment operator with Hart

4

County, Georgia and is paid gross monthly income of $2,343. He also continues to work part-time at the pet boarding business, making approximately $150 per month, and his Georgia Air National Guard monthly payment is now $500. Throughout this case, Whitney has been a self-employed hair stylist. She is currently making approximately $750 per month.

As a result of changes in Steven's employment status, Debtors have amended their Schedules I and J on three separate occasions. Their original Chapter 13 plan was a 36 month plan which paid a minimal dividend to unsecured creditors and provided for surrender of the marital home. A modified plan was filed in May 2018 to take into account Steven's increased income while he was deployed to Africa. The plan proposed to pay $448 per month, retroactive to January 1, 2018. A confirmation hearing on this plan was scheduled for November 28, 2018. However, on November 27, Debtors filed their third amended Schedules I and J to reflect the decrease in Steven's income upon his completion of his Africa deployment. Accordingly, on its face, the modified plan filed in May 2018 is not feasible.

At the hearing on November 28, 2018, counsel for Debtors acknowledged that the plan is not feasible. He advised the Court that a new modified plan would be filed and served on creditors. The Court considered continuing the hearing until the new modified plan was filed. However, Heather and her attorney were in attendance at the hearing. Heather has objected to confirmation of Debtors' plan on the grounds that Debtors' petition was not filed in good faith and that the plan was not filed in good faith. She also objected to confirmation on the grounds that the original schedules and amendments filed in this case were inaccurate and incomplete. Heather, at apparent significant expense, had traveled from England to attend the confirmation hearing. Accordingly, so that Heather would not have to incur the additional expense of returning from England for a continued confirmation hearing, the Court, without objection of the parties, agreed to hear evidence on the issue of whether Debtors filed their petition in good faith.

At the conclusion of the evidentiary hearing, the Court invited the parties to submit their

closing arguments by letter brief to the Court. Having considered those briefs, the testimony and documents introduced at the hearing and the law, the Court now publishes its findings of fact and conclusions of law with respect to the issue of good faith filing.

## DISCUSSION

11 U.S.C. § 1325(a) provides, in pertinent part:

> ...the court shall confirm a plan if-
> ...
> > (7) the action of the debtor in filing the petition was in good faith...

As the Eleventh Circuit has explained:

> ... Chapter 13 contains two "good faith" requirements. First, subsection (a)(3) of § 1325 requires the bankruptcy court to determine if the *plan* was proposed in good faith. 11 U.S.C. § 1325(a)(3). Subsection (a)(7), similarly, mandates consideration of whether the *petition* was filed in good faith. *Id.* § 1325(a)(7). Congress did not define or articulate standards for "good faith" in subsections (a)(3) or (a)(7).
>
> As to subsection (a)(3), this Court had set forth a non-exclusive list of factors relevant to whether a plan was proposed in good faith. [*Kitchens v. Georgia R.R. Bank and Trust Co. (In re Kitchens)*, 702 F.2d 885, 888-89 (1983)]. These factors are: (1) "the amount of the debtor's income from all sources"; (2) "the living expenses of the debtor and his dependents"; (3) "the amount of attorney's fees"; (4) "the probability or expected duration of the debtor's Chapter 13 plan"; (5) "the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13"; (6) "the debtor's degree of effort"; (7) "the debtor's ability to earn and the likelihood of fluctuation in his earnings"; (8) "special circumstances such as inordinate medical expense"; (9) "the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors"; (10) "the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors"; (11) "the burden which the plan's administration would place on the trustee"; (12) "the extent to which claims are modified and the extent of preferential treatment among classes of creditors"; (13) "substantiality of the repayment to the unsecured creditors"; and (14) "other factors or exceptional circumstances." *Id.*

6

> These same *Kitchens* factors for subsection (a)(3) are equally
> relevant to determining whether a petition was filed in good faith
> under subsection (a)(7). Importantly too, "the facts of each
> bankruptcy case must be individually examined in light of [these]
> various criteria to determine whether the chapter 13 plan at issue
> was proposed in good faith." *Id*. at 888. While *Kitchens* does not
> use this phrase, it basically adopts a "totality of the circumstances"
> approach for determining good faith or lack thereof, which is what
> other circuits do, too.

*Brown v. Gore (In re Brown)*, 742 F.3d. 1309, 1316-17 (11th Cir. 2014). The Eleventh Circuit has also:

> ... explained that broadly defined "good faith" means that the
> petition must be filed with the honest intent and genuine desire to
> utilize the provisions of Chapter [13] for its intended purpose--to
> effectuate...reorganization--and not merely as a devise to serve
> some sinister and unworthy purposes of the petitioner. However,
> there is no particular test for determining whether a petition is filed
> in bad faith. Instead, this Court has held that the courts may
> consider any factors which evidence an intent to abuse the judicial
> process and the purposes of the reorganization provisions, or in
> particular, factors which evidence that the petition was file[d] [sic]
> to delay or frustrate the legitimate efforts of secured creditors to
> enforce their rights.

*Rivas v. Bank of New York Mellon (In re Rivas)*, 682 Fed. Appx. 842, 845 (11th Cir. 2017) (internal quotations and citations omitted). Although Debtors bear the ultimate burden of proving their plan is confirmable, Heather, as the objecting creditor, has the initial burden of going forward with some evidence to support her objection. *Matter of Duke,* 447 B.R. 365, 368 (Bankr. M.D. Ga. 2011).

Heather, in her closing letter brief[2] and through questions asked by her attorney at the

---

[2] Heather's attorney spends three and one-quarter pages of his seven page brief arguing that the Court committed error at the hearing by not allowing the transcript of the meeting of creditors to be introduced into evidence. However, as the Chapter 13 Trustee's attorney argued at the hearing, the transcript might obtain objectionable evidence, such as hearsay. Accordingly, exclusion of the transcript was proper. Further, the Court does not understand how Heather was harmed by the exclusion of the transcript. Her attorney questioned both Debtors under oath for almost three hours at the hearing. If, at the meeting of creditors, he had uncovered facts helpful to

hearing, has pointed to a number of factors which she contends show that Debtors filed their petition in bad faith.  Curiously, in his brief Heather's attorney relies on the case of *Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza),* 719 F.3d. 1253 (11th Cir. 2013) to support her argument of bad faith filing.  However, in that case, the Eleventh Circuit addressed the issue of whether a debtor's pre-petition bad faith could be considered in determining bad faith under the "totality of circumstances" standard under 11 U.S.C. § 707(a)(3).  Except with respect to determining disposable income under 11 U.S.C. § 1325(b)(2) (which is not at issue in this case at this time), section 707 does not apply to Chapter 13 cases.  11 U.S.C. § 103(b).  In fact, section 707 is designed to determine whether the filing of a Chapter 7 case is an abuse and that the case should be filed as a Chapter 11 or 13 case.  In short, section 707 and *Piazza* are simply inapplicable to determining whether a Chapter 13 case has been filed in good faith.

Heather also contends that bad faith is shown by fluctuations in Debtors' budgets.  However, the testimony at the hearing established that Steven's income had fluctuated due to interruptions in his employment caused by his deployment to Africa during the first six months of 2018.  Whitney's income had fluctuated due to health problems.  The amendments to their Schedule J do show that there have been fluctuations in their monthly expenses.  Some of the changes in the expenses can be explained by the fact that the original Schedule J did not include the Debtors' monthly payment of $689 for use of Whitney's mother's SUV.  Another major

---

Heather's case, he could have asked questions at the hearing to solicit that information.  If Debtors had answered in a way contrary to their prior testimony at the meeting of creditors, Heather's attorney could have used the transcript to refresh their memory or to impeach their testimony.  Heather's attorney has not pointed to any evidence that the transcript might have revealed that he could not have solicited at the hearing.  Thus, this Court can perceive no error in excluding the transcript.  *Cf. BancorpSouth Bank v. Avery*, 2018 WL 6287988 (Bankr. S.D. Miss. Nov. 30, 2018) (meeting of creditors transcript lacks the safeguards of discovery, did not qualify as a deposition under Bankruptcy Rule 7030 that can be used as evidence in an adversary proceeding under Bankruptcy Rule 7056(c)(1)); Bankruptcy Rule 9005 (no error in excluding evidence is grounds to set aside a judgment where the party's substantial rights have not be affected).

change relates to medical expenses which could be explained by Whitney's testimony that she had health problems last year. There has been no showing that any of the expenses were improper or excessive. Accordingly, Heather has failed to explain why the fluctuations in Debtors' budgets establish a bad faith filing.

Heather complains about Debtors' proposed use of a $1,000 tax refund. However, while that may be relevant to determining whether Debtors are contributing the proper amount of "disposable income" under 11 U.S.C. § 1325(b)(2), the Court fails to see how it relates to a bad faith filing.

Heather complains that Debtors are renting the home of Whitney's parents (the parents having moved to another building on the property) and have agreed to pay upkeep of $200 per month on the home. However, Heather introduced no evidence that the rental payment ($930 per month) and the maintenance cost are an inappropriate amount for a family of six.[3]

At the hearing, Heather's attorney spent a great deal of time questioning Steven on his failure to comply with his obligations under the Separation Agreement and the Temporary Order. The Separation Agreement does not specify how the credit card debt was to be paid. Steven testified that when Heather requested a specific amount each month (presumably Heather's monthly minimum credit card payment to USAA), he was unable to pay that amount and offered to pay a lesser amount, which Heather rejected. Steven also testified that the disruption in his employment, caused by his deployments to Kuwait and Africa, had affected his ability to pay the mortgage on the marital home. The Court concludes that the evidence establishes nothing more than normal financial problems which this Court routinely sees in Chapter 13 cases. The Court

---

[3] The testimony established that Debtors, Whitney's three children and one son of Debtors live in the house.

9

simply fails to find any evidence of bad faith filing relating to Steven's inability to meet his obligations to Heather.

In her objection to confirmation, Heather also argues that the schedules and amendments filed in this case are inaccurate and incomplete. As previously stated, the initial Schedule J did not disclose the $689 monthly payment for the use of Whitney's mother's SUV. However, this was disclosed on all subsequent amendments. Heather also complains that the schedules did not reflect child support payments which Whitney receives from her former husband. However, the evidence established that in the last 12 months, Whitney has received approximately $1,500 in sporadic payments from her former husband. Since March 2018, she has received only $100 and has received nothing since July 2018. The instructions on Part 2 of Schedule I provide, "Estimate monthly income as of the date you file this form." Given the sporadic and relatively small amounts of child support payments she has received, it is not surprising that she did not list child support as "Estimated monthly income". In any event, errors and omissions in schedules do not establish lack of good faith where the debtor receives no advantage therefrom. *In re Roberts*, 339 B.R. 807, 813 (Bankr. M.D. Ga. 2006).

Heather's attorney also spent a great deal of time introducing evidence relating to emails and Facebook postings between Heather and Debtors. These documents appear to relate to correspondence between the parties in 2016.[4] The emails relate to Heather's demands to Steven and Whitney that Steven honor his obligations to her and Steven's responses thereto. The Facebook postings contain derogatory comments allegedly made by Whitney, Steven and others

---

[4] Most of the emails are dated in March 2016. Although some of the Facebook postings have a month and date, they do not show a year. No testimony was given as to the year these Facebook postings were created. However, from dates mentioned within the postings themselves, they appear to have been created in 2016.

about Heather.[5]  In this Court's experience, it is not unusual to see relationships between ex-spouses degenerate.  However, Heather's attorney has not explained how these documents, which were created more than one year before the filing of Debtors' petition, establish bad faith.

The Court has carefully considered the *Kitchens* factors as they relate to the evidence in this case.  The Court agrees with the analysis of Debtors' attorney in his letter brief (Docket No. 119) and his conclusion that the application of the *Kitchens* factors does not establish bad faith.  Further, the Court is fully aware that of all of Debtors' creditors, Heather may suffer the most financially as a result of this Chapter 13 case.  Heather's claim arising under the Separation Agreement represents 43 percent of the claims filed in this case.  Pursuant to 11 U.S.C. § 1328(a)(2), domestic support obligations excepted from discharge under section 523(a)(5) are not dischargeable in a Chapter 13 case.  However, divorce obligations not covered by section 523(a)(5), but covered under section 523(a)(15) (property settlements), are dischargeable.  The Court has made no determination as to whether Steven's obligations to Heather are domestic support obligations or in the nature of a property settlement.[6]  However, even if it is determined that Heather's claim is in the nature of a property settlement and thus dischargeable, that alone would not establish bad faith.

> Congress has determined that some debts that will not discharge in
> a case under Chapter 7 may nevertheless be discharged in a case

---

[5] Whitney testified that she did not send the Facebook postings and that the Facebook account was a fraudulent account created by Heather.  Heather denied this.  Steven testified that he could not remember whether he sent the postings but it was possible that he did.  The Court does not find it necessary to resolve this dispute.

[6] On February 22, 2018, the Court entered an order granting Heather relief from stay to allow her to proceed in state court to establish that her claim against Steven was a domestic support obligation.  The Court has no information as to what steps Heather has taken to prosecute her claim in state court.  However, the Court notes that on December 17, 2018, Debtors filed a complaint (Adversary Proceeding No. 18-03016) in this Court against Heather to determine the dischargeability of Heather's claim.

> under Chapter 13. A debt subject to § 523(a)(15) is one such debt...A debtor, such as [Steven], who lawfully seeks a discharge in bankruptcy is not, by definition, acting in bad faith.

*In re Fulmer,* 535 B.R. 854, 860 (Bankr. M.D. Ala. 2015). *Accord In re O'Neal*, 2012 WL 1940594, at *10 (Bankr. N.D. Ga., April 13, 2012).

It is this Court's conclusion that the "totality of the circumstances" establishes that Debtors filed this case "with the honest intent and genuine desire to utilize the provisions of Chapter [13] for its intended purpose–to effectuate...reorganization–and not merely as a device to serve some sinister and unworthy purpose of the [debtors]." *In re Rivas, supra*. Accordingly, the Court finds that Debtors filed this case in good faith and the bad faith filing objection to confirmation by Heather Chapman is overruled.

*END OF DOCUMENT*